## STATE v. JOHNSON.

Pol. Code 1903, § 934, as amended by Sess. Laws 1905, c. 90, authorizing the court to appoint an attorney to perform temporarily the duties required of the state's attorney, when in the court's opinion the ends of justice would be promoted thereby, confers upon the court authority to appoint an attorney to assist the state's attorney in a trial where in its opinion justice requires.

The trial court's authority, under Pol. Code 1903, § 934, as amended by Sess. Laws 1905, c. 90, to appoint an attorney to assist the state's attorney in a trial is wholly discretionary, and cannot constitute reversible error.

Error, if any, in overruling challenges for bias to two jurors cannot be held prejudicial, where accused did not exercise any of his three peremptory challenges.

Code Cr. Proc. § 292, permits accused, before trial begun, to file an affidavit of the prejudice of the presiding judge. Previous to the calling of the jury, the court ordered a special venire of five to complete the regular panel. By mistake six jurors instead of five were summoned, and their names placed in the jury box. Prior to the noon recess, upon discovery of the mistake, the court remarked: "This jury may step aside. Then we will call a new jury, and we will take a recess until half past one." At the latter time the court ascertained the name of the sixth juror summoned, and entered an

order eliminating his name from the box, and allowing accused to draw an entire new jury if he desired. Accused not availing himself of this offer, such juror was dismissed, the other 11 sitting, and another juror drawn to fill the panel. Immediately after the noon recess, accused filed an affidavit of prejudice of the presiding judge. **Held,** that the affidavit could not be held to have been filed before trial, as required by section 292, on the theory that the court's remark prior to the recess, directing the jurors to step aside, and that a new jury might be drawn, was a discharge of the jurors already drawn, and that, there being then no jurors, the affidavit was in fact filed in time, since, the order offering to discharge the jurors in the box with the privilege of calling a new jury not having been accepted by accused, and the cause having proceeded with the same jurors, there was merely a continuance of the proceedings already begun.

In construing words and phrases in a statute, the court should give effect to headings according to their plain import.

The calling of the case for trial and the drawing of a juror is the "beginning of the trial," within Code Cr. Proc. § 292, permitting accused, before trial begun, to file an affidavit of prejudice of the presiding judge.

The record being silent whether the court admonished the jury, upon separation at a noon recess, as required by Code Cr. Proc. § 380, not to converse among themselves, etc., it will be presumed, in the absence of a contrary showing, that the court performed its duty and gave the proper admonition.

Where neither the amount of costs is specified in a judgment, nor the number of days of imprisonment therefor, such portion of the judgment is void for indefiniteness.

An information for keeping and maintaining gambling apparatus in violation of Pen. Code, § 395, need not designate the town or building in which the offense was committed.

(Opinion filed, Jan. 26, 1910.)

Appeal from Codington County Court. Hon. GEORGE H. MARQUIS, Judge.

Al Johnson was convicted of keeping and maintaining gambling apparatus, and he appeals from the judgment of conviction and an order denying a new trial. Affirmed.

*Seward & McFarland* and *A. Sherin,* for appellant. *S. W. Clark, Atty. Gen.,* and *Mark W. Sheafe, Jr.,* for the state.

SMITH, J. Appellant was convicted in the circuit court of Codington county of the crime of keeping and maintaining gambling apparatus. This appeal is from the judgment and an order overruling a motion for a new trial. It appears from the

record before us that upon the call of the case for trial, the court, having ascertained that defendant was present for trial with three attorneys acting for the defense, and that the board of county commissioners of the county were not then in session, on his own motion made and entered upon the minutes of the court the following order: "Let the record show that, the county commissioners not being in session, and the defendant having employed and appearing with three attorneys for the defense, and it appearing to the court that this is a case where justice requires, George W. Case be appointed to assist the state's attorney as assistant counsel in the prosecution of this case: To which order of the court the defense duly excepted." This action of the court is assigned as error. Section 934, Pol. Code 1903, as amended by chapter 90, Sess. Laws 1905, clearly confers upon the court authority to make such order, whenever in its opinion the ends of justice would be promoted thereby. The law confers upon this court no right to review this action of the trial court. Its exercise of such authority is wholly discretionary, and cannot constitute reversible error. The amended section, so far as it is pertinent to this case, reads as follows: "Sec. 934. The circuit court, whenever there shall be no state's attorney for the county, or when the state's attorney is absent or unable to attend to his duties, or is adversely interested or disqualified, or when in the opinion of the court the ends of justice would be promoted thereby, may appoint by an order, to be entered in the minutes of the court, some suitable person, an attorney at law, to perform for the time being the duties required by law to be performed by the state's attorney." Challenges for actual bias to two of the jurors called were interposed by the accused, which challenges were overruled, and error is assigned. The record, however, discloses that appellant did not exercise any of his three peremptory challenges; hence these rulings cannot be considered prejudicial error. "It is true this question has generally come up where the trial court has disallowed a challenge for cause, but the ruling in the appellate court is uniformly based upon the ground that the unused peremptory challenges disprove any injury to the defendant in the composition

of the jury, and the argument is equally conclusive upon the facts before us." State v. Reddington, 7 S. D. 375, 64 N. W. 172. "While litigants, within the statutory restrictions, have power to reject, it is not their province to select, jurors; and ordinarily, when a prisoner has been tried by one impartial jury, he should not be allowed another trial to another impartial jury simply because the court excused a qualified juror and selected in his stead another possessing the same qualifications, and against whom no objection is urged." State v. La Croix, 8 S. D. 373, 66 N. W. 945. Two challenges to jurors by the state were resisted by appellant, and exceptions entered to the order of the court sustaining such challenges.

The record shows that no objection was made to any juror on the panel which tried the case, except to the two jurors, as to whom the defendant did not choose to exercise his right of peremptory challenge. Ten of the 12 jurors appear to have been acceptable to the accused, and no prejudicial error is shown as to the other two. The defendant was tried by a competent and impartial jury. This assignment of error, therefore, falls clearly within the principle of the rule announced by this court in State v. Reddington, supra, and State v. La Croix, 8 S. D. 369, 66 N. W. 944. The error chiefly relied upon by appellant in this action is the order of the court denying an application for another judge to try said cause upon the filing by the accused of an affidavit of prejudice, under section 292 of the Code of Criminal Procedure. That section provides that in a criminal action prosecuted by indictment or information "at any time before trial is begun * * * if the accused shall make affidavit that he cannot have an impartial trial by reason of the bias or prejudice of the presiding judge of the circuit court where the indictment or information is pending, the judge of such court may call any other judge of a circuit court to preside at said trial. And it shall be the duty of such other judge to preside at said trial and to do any other act with reference thereto, as though he were presiding judge of said circuit." It is settled by the decisions of this court in line with decisions of the courts of other states hav-

Vol. 24 S. D. 38.

ing similar statutes, that this provision of the Code of Criminal Procedure is mandatory, and upon the filing of the affidavit of prejudice the presiding judge loses all jurisdiction over the cause, and is powerless to make any order therein. State v. Henning, 3 S. D. 492, 54 N. W. 536; State v. Palmer, 4 S. D. 543, 57 N. W. 490; State v. Finder, 12 S. D. 423, 81 N. W. 959; State v. Kent, 4 N. D. 577, 62 N. W. 631, 27 L. R. A. 686; State v. Kent, 5 N. D. 516, 67 N. W. 1052, 35 L. R. A. 518.

It is contended by respondent, however, that the affidavit of prejudice, which we deem sufficient in form and substance, was not filed before the trial began, and therefore the accused had waived his right to file the same. It appears that, previous to the calling of the jury, the court ordered a special venire of five jurors to complete the regular panel. By some mistake on the part of the sheriff, six jurors instead of five were summoned, and the names of the six jurors placed in the jury box. Shortly thereafter, the error was discovered, and the accused thereupon objected to the special panel. The regular noon recess was announced, and no further proceedings had until 1:30 p. m. The court then ascertained from the sheriff the names of the first five jurors summond on the special venire, and made the following order: "Let the record show that it appears, through inadvertence, the sheriff has summoned six men instead of five ordered by the court, to complete the panel to the number of 27, and that, through inadvertence, this sixth man's name was placed in the jury box, and that the sixth man's name was H. Duryea. It is the order of the court that the jury box be purged by elimination of this name, H. Duryea, so that we will have the five men who were first summoned by the sheriff on his venire as the proper jurors, with the other regular jurors of the term; and, if the defendant desires it, we will now proceed to call a jury out of the proper 15 names which will be in the jury box after this man's name has been taken thereform." The accused not availing himself of the privilege of calling a new jury, the juror Duryea was dismissed, the other 11 sitting as trial jurors. Another juror was then drawn and accepted to fill the panel, and the jury were thereupon sworn to try the cause. It further appears that

prior to the noon recess, upon the discovery of the sheriff's mistake, the court made the following remark: "This jury may step aside. Then we will call a new jury and we will take a recess until half past 1." Upon the reconvening of the court, the affidavit of prejudice by the accused was immediately filed and submitted by the defendant. Prior to the filing of this affidavit the case had been regularly called for trial, and 11 jurors had been examined upon their voir dire. The accused, by his counsel, had participated in the examination of the jurors, interposing challenges to 2 of the number, which were overruled by the court; and contesting challenges on the part of the state as against 2 other jurors, and had entered his exceptions to the orders of the court sustaining the state's challenges to such jurors.

The question presented to the court upon this appeal is whether the "trial of the action had began," within the meaning of this statute, at the time of the filing of the affidavit of prejudice. It is contended by appellant, first: That the remark of the court, made prior to the noon recess, directing the jurors then in the box to step aside, and that a new jury might be drawn, constituted a discharge of the jurors already drawn, and, there being then no jurors in the box, the affidavit of prejudice was in fact filed before the trial had begun. We are unable to agree with appellant. The order of the court offering to discharge the jurors then in the box, with the privilege of calling a new jury from the entire panel, was not accepted by him, and the cause proceeded with the same jurors in the box. This constituted merely a continuance of the proceedings already begun. The question before us, then which must be decisive is: Does the calling of the case for trial, the placing of 12 jurors in the box, and their examination upon voir dire, constitute the beginning of the trial, or must the case proceed to the point where the jury is sworn before the trial is begun?

We do not find that the exact question presented has ever been before this court or the court of any state having a similar statutory provision in relation to the filing of an affidavit of prejudice disqualifying a trial judge. Numerous definitions of the word "trial" are found in the books, but in most instances we

find the definition limited to and controlled by the particular questions of procedure then under discussion. We think the word "trial" should be construed with its context, and in connection with the particular matter to which it relates. The general rule of construction to be applied to the provisions, of the Code of Criminal Procedure is found in section 636 of that Code, and is as follows: "The rule of common law that penal statutes are to be strictly construed, has no application to this Code. This Code establishes the law of this state respecting the subjects to which it relates, and its provisions and all proceedings under it are to be liberally construed, with a view to promote its objects, and in furtherance of justice. But passing this rule for the present, we shall take up another view of the question here presented.

The Code of Criminal Procedure was first enacted at the eleventh session of the territorial Legislature Assembly, in 1875, and in its substance and general structure remains unchanged to the present time. As originally enacted, it consisted of 11 titles, each subdivided into chapters and sections. Each of these titles was given its appropriate heading. Both the titles and headings have always been retained, and are identical in the Revised Code of 1877, the Compiled Laws of 1887, and the Revised Codes of 1903. Section 292, relating to changes of venue and filing of an affidavit of prejudice against a trial judge in criminal actions, is a part of chapter 5, tit. 7, of the Code of Criminal Procedure. The heading of that title is as follows: "Of Pleadings and Proceedings after Indictment found or Information filed and *before the commencement of the trial.*" The "heading" of the title is therefore in consonance with the requirement of section 292 that an affidavit of prejudice must be filed "before trial is begun." The "heading" of title 8 is as follows: "Of Proceedings *after the commencement of the trial,* and before judgment." Chapter 1 of this title covers all proceedings in the selection of the trial jury, including the exercise of challenges to individual jurors, both peremptory and for cause. Section 350, which is a part of chapter 2, provides: "The jury having been impaneled and sworn *the action must proceed* in the following order," etc. It would seem to follow, if the headings are to be.

considered a part of the Code of Criminal Procedure, that the trial of a criminal case is begun when jurors are called and placed in the jury box for examination on the voir dire.

The various Codes comprising the "Revised Codes of South Dakota," 1903, passed as separate and distinct acts, were made to take effect on the 1st day of July, 1903.

The title of the act is found at the beginning of each Code. That relating to the Code of Criminal Procedure is as follows:

"An act to provide a Code of Criminal Procedure for the state
of South Dakota embracing the subjects therein defined as
follows:

"Preliminary provisions.

"Of the courts having jurisdiction in criminal actions.

"Of the prevention of public offenses.

"Of judicial proceeding for the removal of public officers.

"Of the proceedings in criminal actions prosecuted by indictment or information to the commitment, inclusive.

"Of proceedings after commitment and before indictment or information.

"Of the indictment and information.

"*Of pleadings and proceedings after indictment found or information filed, and before the commencement of the trial.*

"*Of proceedings after the commencement of the trial and before judgment.*

"Of judgment and execution.

"Writ of error.

"Prisons and imprisonment.

"Miscellaneous proceedings.

"Habeas corpus.

"Be it enacted by the Legislature of the state of South Dakota:

"1. That the following provisions, contained in sections 1 to 789, inclusive, be and the same are hereby constituted the Revised Code of Criminal Procedure of the state of South Dakota, and which are in the words and figures following, to wit. * * *"

The headings of titles in this act are expressedly made a part of the Code itself, and should be given proper construction

and effect. In addition to this the general rule of construction as to titles and headings, as stated in 28 Am. & Eng. Ency. Law, pp. 629, 630, is as follows: "Especially may the title be consulted as an aid to interpretation where, as is the case in many states, the Constitution provides that the subject of the act shall be expressed in the title, for under such constitutional provisions the title becomes a part of the act itself. * * * Headings to certain groups of clauses in statutes of such character as to permit of the headings being read into the clauses placed under them have been occasionally used in England. They constitute an important part of the act itself, and may be read, not only as explaining the sections which immediately follow them, as a sort of preamble thereto, but as affording a better key to these sections than a mere peramble. *Headings are commonly used in the United States* to classify the divisons of extended acts or Codes, but they are grammatically separate from the sections or classes placed under them. This method of grouping sections was introduced in *England* in 1854; the practice being adopted, it is said from the Code of New York. Such headings have been declared, in the *United States,* to be a part of the statute, and to be inserted 'to control the scope and general application of the general words used in' the sections grouped under them. * * *"" It seems clear, therefore, that in construing words and phrases used in the statutes the court should give effect to the headings according to their plain import.

We are aware that this view seems to be in conflict with that expressed in State v. Pancoast, 5 N. D. 516, 67 N. W. 1052, 35 L. R. A. 518. Section 7401, Comp. Laws 1887, which was construed in that case, was formerly in force in both North and South Dakota, as a part of chapter 2, tit. 8, of the Code of Criminal Procedure of 1887, which regulates "proceedings after the commencment of the trial." The learned North Dakota court gives exactly the same construction to the section providing for a change of venue—and of judges—as that placed by that court in State v. Hazledahl, 2 N. D. 521, 52 N. W. 315, 16 L. R. A. 150, upon section 7401, which provides for calling a new juror, or impanelling a new jury, when a juror becomes sick

during the trial. We have no criticism to offer as to the construction placed upon the word "trial" in State v. Hazledahl, which holds that the word "trial" is used in section 7401 in a restricted sense. That court says: "Certainly the 'trial' mentioned in section 7401 terminates with the termination of the investigation of the facts, otherwise section 7413 would be superfluous. This indicates that the word 'trial,' as used in section 7401, is restricted in its significance to the investigation of the facts, commencing after the jury is sworn and ending with the charge of the court. The meaning of the word is so limited by both section 7401 and section 7413. This construction deprives the accused of no constitutional right, and involves no hardship." But in State v. Pancoast, supra, the court in considering the section relating to the filing of a motion for a change of venue says: "In construing another section of the Code of Criminal Procedure we held in State v. Hazledahl, 2 N. D. 521, 52 N. W. 315, 16 L. R. A. 150, that the trial began after the jury was impaneled. It is clearly in the interests of justice to persons accused of crime that this section should receive the same construction, and there is ample authority to support this ruling. Price v. State, 8 Gill (Md.) 296; Smith v. State, 44 Md. 530; Jenks v. State, 39 Ind. 1; Weaver v. State, 83 Ind. 289; Hunnel v. State, 86 Ind. 431; Edwards v. State, 25 Ark. 444. The wording of section 8111 of the Revised Codes of 1895 of this state differs to such an extent from the wording of section 7312 of the Compiled Laws under which this section was tried that we may be required to rule differently in cases tried under the Revised Codes." Without stopping to discuss them, we may say in our judgment the cases cited as sustaining the conclusion of the court are not in point. In State v. Pancoast, supra, a motion for change of venue had been presented to the court before any juror had been called, but was overruled pro forma, with leave to renew it later, should an attempt to secure a jury from the panel be unsuccessful. The entire panel was exhausted upon examination on voir dire, and no juror obtained, and upon intimation of the court that he would consider it, the motion for change of venue was renewed, and was granted by the court.

Upon this state of facts we think the court properly ruled that the motion should be held to have been made before the trial had begun. The language above quoted, we think, may be regarded as obiter, particularly in view of the intimation of the court that a different conclusion might be reached under the later statute.

We have examined many cases which strongly reinforce the conclusion arrived at in this case, independently of the provisions of our Code. The case of Lipscomb v. State, 76 Miss. 240, 25 South. 158, is in point. A general statute of that state expressly limited the duration of the term of court in Kemper county. The Code of that state provided: "When the trial of any case, civil or criminal, *has been commenced and is in progress,* in any court, and the time for the expiration of the term, as prescribed by law, shall arrive, the court may proceed with such trial or hearing, and bring it to a conclusion in the same manner and with the like effect as if the stated term had not expired." Code 1892, § 933. The case was called for trial, and six jurors examined and accepted, but not sworn, when the last day of the term expired. The accused objected to further proceedings at the term because the trial had not been "commenced," as contemplated by the statute. The contention was that the swearing, and not the drawing and examination of the jury, was the commencement of the trial. The court says: "The words 'hearing' and 'trial' in the statute under consideration are not technical, we think, as there used; we must therefore construe them according to their ordinary and common acceptation and meaning. The best thought that we are enabled to give to the question has led us to conclude that a trial is commenced, within the meaning of the statute, construing its terms according to the ordinary and common acceptation and meaning, when all dilatory proceedings have been disposed of, and when all ordinary efforts, the object of which is to prevent a trial, have been ineffectually exhausted, and the cause is called for trial, and nothing remains to be done except to proceed therein."

In the case of Hopt v. Utah, 110 U. S. 574, it was held that the impaneling of the jury was a part of the trial and should be

in the presence of the defendant. In Ward v. Territory of Oklahoma, 8 Okl. 25, 56 Pac. 704, in a similar case that court says: "A trial in a criminal case begins at the commencement of the impaneling of the jury, and is ended when the jury is discharged, and during every part of the trial of a felony case the defendant must be personally present." In Territory v. Kelly, 2 N. M. 302, the court says: "Neither can there be any doubt that the calling and examination of jurors to try a cause is a part—and to the prisoner at the bar a very important part—of the proceedings of a trial."

Under the federal statute for removal of causes from state to federal courts (Rev. St. U. S. § 639), where the petition must be presented "before trial," the Supreme Court of Minnesota says: "The application for removal must be made, and the law of Congress be fully complied with by the party, before trial. This means before the trial has began. When a cause has been called for trial in its order, and a jury has been called to try the cause, the trial has been begun, even though the jury has not been sworn. The calling of the jury is a part of the trial." St. Anthony Falls Water Power Co. v. King-Bridge Co., 23 Minn. 186, 23 Am. Rep. 683. Under the same statute the Supreme Court of Nebraska says: "We are of the opinion, too, that the order came too late. The calling of jurymen into the box, and examining them on their voir dire, and accepting them as jurors, is, under our statute, the commencement of a trial. A party must act in good faith, not only with the court, but the adverse party, and should not be permitted to trifle with either." Anglo Am. Provision Co. v. Evans, 34 Neb. 44, 51 N. W. 311.

While we do not approve the conclusion reached upon the particular point there under discussion, we may quote with approval the language used in People v. Stewart, 64 Cal. 61, 28 Pac. 112, as a correct statement of the law. That court says: "The title of the chapter which provides for challenging the jury is, 'Of proceedings after the commencement of the trial and before judgment' [Pen. Code Cal. tit. 7]. We think, within the meaning of the Code, a trial commences when the case is called for trial unless the trial be then postponed; that everything

that transpires in the case after that, and before judgment, is a part of the trial."

The law providing for a change of venue and of judges is designed to secure and preserve the right of the accused to a trial before a fair and impartial court and jury. But the requirement contained in the Code of Criminal Procedure that the accused shall exercise the right to such change before the trial has begun is a proper and reasonable regulation of the right. And we cannot give this clause of the statute an interpretation which would make a trial scarcely less than a farce, in effect enabling a person accused of a crime to proceed with the impaneling of a jury until 11 jurors have been drawn and examined, and challenges both peremptory and for cause have been exhausted, and then perchance, because he is not satisfied with the jurors, or may want further delay in the trial, permit him to file a motion for a change of venue, or an affidavit of prejudice disqualifying the presiding judge. We cannot believe the Legislative Assembly in the enactment of the Code of Criminal Procedure contemplated the possibility of such a proceeding, nor do we believe that a fair and reasonable interpretation of the Code requires it. We hold, therefore, that the calling of the case for trial and the drawing of a juror is the beginning of the trial, and that the right to file an affidavit of prejudice against the trial judge cannot be exercised thereafter.

We have not overlooked the case of State ex rel. Kotilinic v. Sevenson, 18 S. D. 196, N. 99 W. 1114, in which certain expressions are used by this court apparently at variance with the conclusions reached in this case. In that case the point under discussion was whether the record was sufficient to show that the accused, charged with a felony, was personally present "at the trial." The record disclosed affirmatively that the accused was personally present from the arraignment to the fourth day of the trial, but it is silent as to the personal presence of the accused on that day. The question as to when the trial was begun was not material in that case; and the language there used "that the trial begins when the jury is sworn" may be regarded as obiter dictum.

Appellant assigns as error the alleged failure of the court to admonish jurors, as required by section 380, Code Cr. Proc., upon their separation at the noon recess, during the impaneling of the jury. The record before us is silent upon this matter. The identical question was decided in People v. Ye Foo, 4 Cal. App. 730, 89 Pac. 452, under section 1122 of the Penal Code of California, which is the same as our own statute. That court says: "The record fails to show that the court admonished the jury at each adjournment, as required by section 1122 of the Penal Code, not to converse among themselves, nor with any one else, on any subject connected with the trial, or to form or express any opinion thereon until the cause is finally submitted. In the absence of a showing to the contrary we will presume that the court did its duty, and gave the proper admonition at each adjournment. In the case of People v. Coyne, 116 Cal. 295, 48 Pac. 218, it appeared affirmatively that the court did not admonish the jury at a certain adjournment of the court, and the court said: 'But the error in this regard is technical, and not of that importance to demand a reversal of the judgment and a new trial.' In People v. Thompson, 84 Cal. 598, 24 Pac. 384, cited by defendant, it appeared affirmatively, that the court did not admonish the jury, and yet the court said: 'In the present case no injury appears to have resulted, and there may have been no prejudicial error.' In People v. Maughs, 149 Cal. 253, 86 Pac. 187, the opinion does state that the record should disclose the fact that the jury were admonished, but the case was not reversed on this point. The learned judge who wrote the opinion in the Maughs Case cites no authority for the statement that the record should disclose the fact of such admonition being given." This case appears to us to be decisive of the question here presented.

Appellant in his sixteenth assignment of error contends that the judgment of the court is erroneous. The information is based upon sections 395 and 396, Pen. Code.

"Sec. 395. It is unlawful to maintain or keep any table, cards, dice, or any other article or apparatus whatever, useful or intended to be used in playing any game of cards or faro, or other game of chance, upon which money is usually wagered.

"Sec. 396. Lvery person who knowingly violates the last section is guilty of misdemeanor."

The penalty is in section 14 of the Penal Code: "Except in cases where a different punishment is prescribed by this Code, or by some existing provisions of law, every offense declared to be a misdemeanor is punishable by imprisonment, in a county jail not exceeding one year, or by a fine not exceeding five hundred dollars, or by both such fine and imprisonment."

The judgment of the court is that the defendant pay a fine of $500 and the costs of prosecution, and, in default of payment of such fine and costs, he be imprisoned in the county jail for a period of ——— days, "being one day for each $2 of such fine and costs, and that he stand committed until said judgment and sentence be complied with. The contention of appellant is that a judgment imposing imprisonment for costs is illegal. It is unnecessary to consider this question in this case, for the reason that the judgment itself is so indefinite in its terms and meaning, in so far as it relates to imprisonment for costs, as to render that portion of the judgment wholly void. No amount of costs is specified in the judgment, nor is the number of days of imprisonment fixed. Therefore, so far as the imprisonment for costs is concerned, the judgment is incapable of enforcement. But that portion of the judgment relating to the fine is 'definite and capable of execution. The amount of the fine is fixed, and the judgment provides that the defendant, unless the fine is paid, shall stand committed to the county jail one day for each $2 of the fine named. The judgment in this respect is in accord with the requirements of the statute. The recitals in the judgment as to imprisonment for costs cannot in any event prejudice the appellant, and need not be further considered.

By a motion in arrest of judgment the appellant challenges the sufficiency of the information upon the ground that the facts stated do not constitute a public offense, and that the same is indefinite and uncertain, and does not state facts that will enable a person of common understanding to know what is intended to enable him to prepare his defense. The particular matters specified in appellant's brief are that the information does not

designate the town or the building in which the offense was committed. The statute upon which the information is drawn is quoted above. The information charges the offense substantially in the language of the statute, laying the venue in Codington county. The particular time, place, city, building, or locality in the county is not made by the statute an ingredient of the offense. If committed at any time, place, building, city, or locality in the county in which the venue is laid, the acts named in the statute constitute a crime. And it seems to us that a particular description of the time, place, building, locality, or city is no more necessary in an information under this statute to enable the accused to prepare for trial, or to plead a former conviction or acquittal, than in an information charging the crime of larceny, or the keeping of a bawdy house.

We find no error in the record. The judgment and order of the trial court are affirmed.